# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BAM BAGS, LLC,** | ) CASE NO. 1:15-cv-02172-ER |
| **Plaintiff,** | ) JUDGE EDGARDO RAMOS |
| v. | ) |
| **ZIP-IT, LTD.,** | ) |
| **Defendant.** | ) |

## PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

January 15, 2016

**SCHNEIDER ROTHMAN INTELLECTUAL PROPERTY LAW GROUP, PLLC**
4651 North Federal Highway
Boca Raton, FL  33431
561.404.4350 – Telephone
561.404.4353 – Facsimile
JOEL B. ROTHMAN (JR 0352)
joel.rothman@sriplaw.com
*Attorney for Plaintiff, BAM Bags, LLC*

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................. 1

II.   THE LEGAL STANDARD FOR CLAIM CONSTRUCTION ......................................... 1

      A.    Intrinsic Evidence ................................................................................................... 2

      B.    Extrinsic Evidence .................................................................................................. 3

III.  THE '985 PATENT ........................................................................................................... 4

IV.   THE EVIDENCE SUBMITTED BY PLAINTIFF ............................................................ 5

      A.    The Disputed Terms ................................................................................................ 5

            1.    "compound tape" ........................................................................................... 6

            2.    "mid-section" ................................................................................................. 8

            3.    "longitudinal folded tape material" ............................................................... 9

            4.    "protective liner" ......................................................................................... 11

V.    CONCLUSION ................................................................................................................ 11

# **TABLE OF AUTHORITIES**

## **Cases**

*Aaipharma v. Kremers Urban Dev. Co.*, 2012 U.S. Dist. LEXIS 144750 (S.D.N.Y. 2012).......... 2

*Chrisha Creations, Ltd. v. Dolgencorp, Inc.*, 817 F. Supp. 2d 363 (S.D.N.Y. 2011)..................... 2

*Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998).................................... 3

*DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314 (Fed. Cir. 2001)............................................ 1

*InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318 (Fed. Cir. 2012) .................. 3

*Inv. Tech. Group, Inc. v. Liquidnet Holdings, Inc.*, 2010 U.S. Dist. LEXIS 3588 (S.D.N.Y. 2010)
 .................................................................................................................................................. 1, 2

*Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365 (Fed. Cir.
 2002) ............................................................................................................................................ 4

*Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709 (Fed. Cir. 1998).............................................. 4

*Laitram Corp. v. NEC Corp.*, 163 F.3d 1342 (Fed. Cir. 1998)...................................................... 3

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), ................................ 1, 2, 3

*Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313 (Fed. Cir. 2005) ........................................... 2

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ......................................... 2, 3, 4

*SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107 (Fed Cir. 1985)............................... 2, 3

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d. 1313 (Fed. Cir. 2002)........................................ 2

*Vitronics Corp. v. Conceptronic, lnc.*, 90 F.3d 1576 (Fed. Cir. 1996) ....................................... 2, 3

## **Statutes**

35 U.S.C. § 271.............................................................................................................................. 1

## I.     INTRODUCTION

Plaintiff, BAM Bags, LLC ("BAM Bags") submits this Opening Claim Construction Brief to assist this Court in correctly construing four claim terms in Claim 1 of United States Patent No. 7,509,985 (" the '985 Patent") (annexed as Exhibit 1) that are disputed by the parties. The parties' Joint Disputed Claim Terms Charts are annexed as Exhibit 2.  BAM Bags asks the Court to construe four claim terms: "compound tape," "mid-section," "longitudinal folded tape material," and "protective liner."

BAM Bags submits that based upon the intrinsic evidence in the '985 Patent, and based upon the declaration of Parson's School of Design Professor of Fashion Accessories, Aneta Genova, and based upon the law, this Court should construe the four terms as follows:

    a.   "compound tape" means "two tapes joined";

    b.   "mid-section" means "offset from the edge [of the tape]";

    c.   "longitudinal folded tape material" means "folded lengthwise"; and

    d.   "protective liner" means "the interior portion of the tape of the formed container."

## II.     THE LEGAL STANDARD FOR CLAIM CONSTRUCTION

A patent infringement analysis under 35 U.S.C. § 271 requires, as a first step, that the Court construe the meaning of the disputed patent claim terms as a matter of law.  *See Markman v. Westview Instruments, Inc*., 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The purpose of claim construction is for the Court to determine what the disputed claim terms mean "'in order to understand and explain, but not to change, the scope'" of the claim.  *Inv. Tech. Group, Inc. v. Liquidnet Holdings, Inc*., 2010 U.S. Dist. LEXIS 3588 *7 (S.D.N.Y. 2010), *quoting DeMarini Sports, Inc. v. Worth, Inc*., 239 F.3d 1314, 1322 (Fed. Cir. 2001) (internal

1

quotations omitted).  Claims are "construed without reference to the accused device [or product]."  *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed Cir. 1985).

Claim terms are not construed in a vacuum;  *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) rather, there is a well-established hierarchy of evidence that Courts use in construing disputed claim terms.  *Aaipharma v. Kremers Urban Dev. Co.*, 2012 U.S. Dist. LEXIS 144750, *7 (S.D.N.Y. 2012), *citing Markman*, 52 F.3d at 970-71.  Courts consider intrinsic evidence first.  *Aaipharma*, 2012 U.S. Dist. LEXIS at *7.  Intrinsic evidence is the patent claims, the patent specification and drawings, and the patent's prosecution history.  *Id.* (The prosecution history is a record of the proceedings between the patent applicant and the United States Patent and Trademark Office.)  After considering the intrinsic evidence, Courts may consider extrinsic evidence, particularly expert testimony presented by the parties. Extrinsic evidence supports the intrinsic evidence by providing background information and clarifying ambiguities.

### A.   Intrinsic Evidence

The patent itself and its prosecution history are intrinsic evidence.  The patent specification includes an abstract, a background, a summary, figures (patent drawings), and a detailed description of the figures.  *Chrisha Creations, Ltd. v. Dolgencorp, Inc.*, 817 F. Supp. 2d 363, 367 (S.D.N.Y. 2011), *citing Inv. Tech. Group, Inc. v. Liquidnet Holdings, Inc.*, 2010 U.S. Dist. LEXIS 3588 *7 (S.D.N.Y. 2010).

Within the "intrinsic evidences," courts first look to the words of the claims.  *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d. 1313, 1324 (Fed. Cir. 2002); *Vitronics Corp.*, 90 F.3d at 1582.  The words of the claims are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention.  *Phillips v. AWH*

*Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc); *accord*, *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012); *Vitronics*, 90 F.3d at 1582.  The ordinary and customary meaning of a claim term may be determined solely by viewing the term within the context of the claim's overall language.  *See, Phillips,* 415 F.3d at 1314 ("[T]he use of a term within the claim provides a firm basis for construing the term.").

Claim terms should be construed in a manner that is consistent with the scope of the patent's specification.  *See Markman*, 52 F.3d at 979.  The specification is the best guide for construing the claims.  *See Phillips*, 415 F.3d at 1315; *Vitronics*, 90 F.3d at 1582.  Courts must construe claim terms consistent with the rule that limitations in the specification may not be read into the claims.  *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998); *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998); *SRI Int'l,* 775 F.2d at 1121.

Courts should define disputed claims by looking "first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)) (internal quotations omitted).

### B.   Extrinsic Evidence

Extrinsic evidence includes dictionaries, technical treatises, and expert declarations that the Court may use to help understand the underlying technology and the manner in which one skilled in the art might use the claim terms.  *Phillips*, 415 F.3d at 1318.  An expert's supported assertions as to a term's definition is helpful to the Court when there is an ambiguity.  *Id*.

Ultimately, however, "extrinsic evidences" are not as significant as "intrinsic evidences" in defining claim terms.  *Phillips*, at 1317.  Courts should discount any extrinsic evidence "that is

clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." *Id*. at 1318 (quoting *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998)) (internal quotations omitted).

Once the proper meaning of a term used in a claim has been determined, the term must have the same meaning for all claims in which it appears. *Phillips,* at 1314 (citations omitted); *Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002).

### III.  THE '985 PATENT

The '985 Patent is titled "Handbag—with Novel Features" and describes a bag that can be carried by hand. The bag is made from one continuous length of zipper. The '985 Patent refers to a "compound tape" however, a compound tape is not a traditional zipper tape. Instead of joining two tapes by fastening the zipper teeth at the inner edge of each tape to form a traditional zipper, the 'compound tape" in the '985 Patent has two tapes joined at the fabric portions. The continuous length of zipper is zipped to itself in a spiral to form a bag. The bag can be zipped closed. When the bag is completely unzipped, there will be one long zipper tape with one zipper fastener.

Claim 1 is the only claim of the '985 Patent at issue in this case. Claim 1, with the disputed terms to be construed emphasized, is reproduced below.

Claim 1

> A container suitable for hand carry formed with longitudinally fastened successive tiers of a spiraled elongated tape,
> the ***compound tape*** being comprised of two relatively wide elongated tapes,

    the wide elongated tapes having continuous attachment means fastened longitudinally adjacent one extended longitudinal edge of each tape, respectively,
    the two wide elongated tapes further being securely attached together longitudinally along the ***mid-sections*** thereof,
    the wide elongated tapes then having, respectively, longitudinal foldable tape material opposite the respective tape edges upon which fasteners have been fixedly attached,
    whereby successive spiraled sections of the compound tape may be attached to one another forming a container having an exterior and an interior,
    the exterior of the successive tiers of attached compound tape providing readily accessible access to the longitudinal fasteners and the interior of the successive tiers of attached compound tape being provided with a ***protective liner*** formed by the ***longitudinal folded tape material*** of the respective wide elongated tapes.

### IV. THE EVIDENCE SUBMITTED BY PLAINTIFF

Plaintiff relies on intrinsic evidence to construe the disputed claim terms. In particular, Plaintiff relies on the claims and specification of the '985 Patent. More specifically, Plaintiff relies on the claim language, the figures pertaining to disputed claim terms, and the written descriptions of those figures to define the disputed terms.

Plaintiff also relies on the expert declaration of Aneta Genova, Associate Teaching Professor of Fashion Accessories at Parsons School of Design, a copy of which is referred to herein as "Genova" and annexed as Exhibit 3. Professor Genova explains the terminology in the '985 Patent and how the terms would be understood by a person of ordinary skill in the art. The Genova Declaration is consistent with the '985 Patent, supports the intrinsic evidence, and further explains the disputed claim terms.

#### A. The Disputed Terms

This Court should construe the disputed Claim 1 terms as follows:

a. "compound tape" means "two tapes joined";

5

      b.        "mid-section" means "offset from the edge [of the tape]";

      c.        "longitudinal folded tape material" means "folded lengthwise"; and

      d.        "protective liner" means "the interior portion of the tape of the formed container."

When determining the meaning of terms in fashion and accessory patents, a person of ordinary skill in the art would first review the claim language, then the figures of the patent, and then the written description to identify, define, and describe the terms. (Genova, pp. 2-3, para. 8) After reviewing the language of Claim 1 of the '985 Patent, the disputed terms should be construed by examining Figures 2-4 and 7-8 in the '985 Patent and then by consulting the written description.

            1.        "compound tape"

The proper construction of "compound tape" is "two tapes joined." A person of ordinary skill in the art would refer to Figures 2, 3, and 4 in the '985 Patent to determine how and where



the two elongated tapes are connected to form the "compound tape" 14. (Genova, p. 5, para. 14).

6

Figure 2 of the '985 patent illustrates a plain view of a single elongated "compound tape" used to form a handbag. ('985 patent at column 2, lines 33-36) Figure 2 shows the "compound tape" 14 comprised of two slide fastener tapes at 16 and 26. (Genova, pp. 3-4, para. 10) The '985 Patent detailed description explains: "The compound tape 14 is comprised of two [slide fastener] tapes 16, 26. Tape 16 is comprised of an elongated strip of fabric or other flexible material having slide fastener attachment teeth along the edge or periphery thereof." ('985 Patent, column 2, lines 65-67 and column 3, lines 1-8; Genova, p. 4, para. 12.)

A "compound tape" is different from a traditional zipper. (Genova, p. 3-4, para. 10) A traditional zipper is made of two tapes, each having an inner edge with zipper teeth. (Genova, p. 3, para. 9) Each tape also has an outer or periphery edge with fabric. (Genova, p. 3, para. 9) A slide fastener joins the two tapes together by fastening the zipper teeth on the inner edges. (Genova, p. 3, para. 9) The two joined tapes form the traditional zipper. (Genova, p. 3, para. 9) In contrast, the "compound tape" according to the '985 Patent is made of two tapes joined at the fabric with the zipper teeth positioned along the outer edges of the tape. ('985 Patent at column 2, lines 66-67 and column 3, line 1; Genova, p. 4, para. 12) A slide fastener connects the zipper teeth when fastened or "zipped."

Figure 3 of the '985 Patent illustrates a cross section view of a handbag constructed with a single elongated "compound tape," and Figure 4 (below) illustrates a cross section view of the compound tape shown in Figure 2 (above). ('985 Patent column 2, lines 37-40) Figures 3 and 4 (below) of the '985 Patent more specifically show the "compound tape" having zipper teeth 18, 28 on its peripheral or outer edges. (Genova, p. 5, para. 13) The "compound tape" is represented by 14, and the two elongated tapes are represented by 26 and/or 16. Figure 4 shows

7

that elongated tape 16 is joined with elongated tape 26 by a seam 36 to form the "compound tape" 14. ('985 Patent, column 2, lines 65-67 and column 3, lines 1-8; Genova, p. 5, para. 13.)



Therefore, a person of ordinary skill in the art at the time the invention was made would understand "compound tape" to mean "two tapes joined."

### 2. "mid-section"

The proper construction of "mid-section" is "offset from the edge [of the tape]." A



person of ordinary skill in the art would examine Figure 8 of the '985 Patent to identify a "mid-section." Figure 8 of the '985 Patent is a cross section view of a fully formed hand-carried container constructed with a single elongated compound tape. ('985 Patent column 2, lines 45-

8

51) The seam, represented by 74, identifies the mid-section of the compound tape 64 which is formed by tapes 66 and 67 joined together. (Genova, p. 6, para. 16) A person of ordinary skill in the art would recognize from the '985 Patent that the seam *may* be "placed a measured distance from the edges where the slide fastener attachment teeth 70 and 72 are attached." ('985 Patent, column 4, lines 24-26; Genova, p. 6, para. 17) The '985 patent specification does not limit exactly where the "mid-section" is on the compound tape 64 so long as it is between "where the slide fastener attachment teeth 70 and 72 are attached." ('985 Patent, column 4, lines 24-26)

Therefore, a person of ordinary skill would understand "mid-section" to be "offset from the edge [of the tape]."

3.   **"longitudinal folded tape material"**

The proper construction of "longitudinal folded tape material" is "folded lengthwise." A person of ordinary skill in the art would examine Figure 7 of the '985 Patent to identify "longitudinal folded tape material." Figure 7 (below) of the '985 Patent illustrates the elongated



compound tape from which a hand carried container was formed.  ('985 Patent, column 2, lines 47-49)  A person of ordinary skill in the art would refer to Figure 7 of the '985 Patent to identify the longest side of the "compound tape."  Once the longest side is identified, the "longitudinal folded tape material can be identified.  (Genova, p. 7, para. 24)

A person of ordinary skill in the art would understand from Figure 7 that compound tape 64 runs lengthwise as demonstrated by the arrows at 90 pointing in either direction of the tape. (Genova, p. 7, para. 25)  In Figure 7, 90 represents that the top of the container or bag is formed when the fastener 80 fastens the zipper teeth along the length of the compound tape 64.  ('985 Patent, column 4, lines 40-49; Genova, p. 7, para. 25)  Figure 7 shows a break in the compound tape 64 at 83 meaning "the compound tape may be of an extended length."  ('985 Patent, column 4, lines 40-41; Genova, p. 7, para. 25)

The specification of the '985 Patent consistently describes the tapes as elongated and the fastening or zipping as being longitudinal or along the length of the tapes.  (*see generally*, '985 Patent, columns 2-4; Genova, p. 6, para. 20)  A person of ordinary skill in the art would interpret longitudinal folds of the tape to occur longitudinally or lengthwise in either direction of the "compound tape" 64 as indicated by the arrows in 90 in Figure 7.  ('985 Patent, column 4, lines 40-41; Genova, p.8, para. 26)  A person of ordinary skill in the art would construe "folded" as meaning the fabric is overturned, bent, or that at least two pieces of the same material are overlapped over one another.  (Genova, p. 7, para. 22)

Therefore, a person of ordinary skill in the art would construe "longitudinal folded tape material" to mean "folded lengthwise."

### 4.     "protective liner"

The proper construction of "protective liner" is "the interior portion of the tape of the formed container." Claim 1 of the '985 Patent states that the protective liner is "formed by the longitudinal folded tape material of the respective wide elongated tapes." ('985 Patent, column 5, lines 24-25; Genova, p. 8, para. 31)  Therefore, a person of ordinary skill in the art would understand a portion of the elongated tape material itself is the "protective liner." (Genova, p. 8, para. 31)  Furthermore, the last sentence in the abstract of the '985 Patent states, "The compound tape is configured to [. . .] provide a protective lining within the fully formed handbag or container." ('985 Patent, p. 1)  A person of ordinary skill in the art would understand the compound tape itself forms the protective liner, and no additional material is required. (Genova, pp. 8-9, para. 32)

Some accessories, particularly those suited for hand carrying, have a liner formed by the container's material itself, and other accessories may have an additional piece of material added to the interior of the container. (Genova, p. 8, para. 29)  With or without an additional piece of material, a person of ordinary skill in the art would recognize the interior portion of an accessory is a protective liner. (Genova, p. 8, para. 29)  The purpose of the protective liner is to protect the contents of the bag or to protect the interior of the bag itself. (Genova, p. 8, para. 30)

Therefore, a person of ordinary skill in the art would interpret "protective liner" to mean "the interior portion of the tape of the formed container."

### V.     CONCLUSION

Plaintiff has proposed a construction of the disputed terms, without regard to the accused products, based on the claim language, written description, and figures in the '985 Patent. In addition, Professor Genova's Expert Declaration supports the intrinsic evidence presented and is

appropriate for this Court's consideration in construing the disputed claim terms. Therefore, this Court should give the following definitions to the four disputed terms:

a. "compound tape" means "two tapes joined";

b. "mid-section" means "offset from the edge [of the tape]";

c. "longitudinal folded tape material" means "folded lengthwise"; and

d. "protective liner" means "the interior portion of the tape of the formed container."

Plaintiff requests this Court adopt the above claim term constructions.

DATED: January 15, 2016              Respectfully submitted,

                                                    */s/ Joel B. Rothman, Esq.*
JOEL B. ROTHMAN (JR 0352)
joel.rothman@sriplaw.com
**SCHNEIDER ROTHMAN INTELLECTUAL PROPERTY LAW GROUP, PLLC**
4651 North Federal Highway
Boca Raton, FL  33431
561.404.4350 – Telephone
561.404.4353 – Facsimile
*Attorney for Plaintiff Bam Bags, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2016, a true and correct copy of the above and foregoing was served upon counsel listed below by the Court's ECF system or by electronic email.

                     _/s/ Joel B. Rothman, Esq._
                     JOEL B. ROTHMAN (JR 0352)

## SERVICE LIST

James M. Wherley, Esq.
jwherley@bmsa.com
Daniel J. Schlue, Esq.
dschlue@bmsa.com
Whitney L. Willits, Esq.
wwillits@bmsa.com
**BLACK MCCUSKEY SOUERS & ARBAUGH**
220 Market Avenue South, Suite 1000
Canton, OH 44702
330.456.8341 – Telephone
330.456.5756 – Facsimile
*Attorneys for Defendant*

Natalie C. Clayton, Esq.
natalie.clayton@alston.com
**ALSTON & BIRD, LLP (NYC)**
90 Park Avenue
New York, NY 10016
212.210.9573 – Telephone
212.922.3845 – Facsimile
*Attorney for Defendant*